Oral argument not to exceed 15 minutes per side. Ms. Sheline for the appellants. Yes, I am the attorney for Mr. Wheaton, Mr. Hart, Mr. Turner. I request three minutes more for the record. Your Honor, the plaintiffs and appellants in this case are all married. They receive Medicare and they pay for their Medicare purchase premiums. However, their spouses have little or no incomes. All three apply for the Medicare premium assistance programs, which we identify as MPACs in our briefs and in our discussions. Mr. Wheaton and Mr. Turner were denied and Mr. Hart was terminated from their Medicaid benefits because their income was above Ohio's individual needs standard. As the state hearing officer stated in his decision, which is attached to the amended complaint, Mr. Hart's termination, there's no dispute that Mr. Hart and his wife compose a family unit. However, Mr. Hart was not – Mrs. Hart, excuse me, was not Medicare eligible. The case filings resulting from that was the appellants filed this 1983 action challenging the appellant's policy of limiting Medicaid eligibility for Medicare premium assistance to only those who meet an individual needs standard, even though they're husband and wife. The appellants requested both individual and class certification for all similarly situated individuals. So the heart of this case is the dispute over Ohio's policy of limiting MPAC participation to only those applicants who meet the individual needs standard. Now, the district court correctly stated that, of course, Medicaid is a joint federal and state program. Participation is voluntary. But once a state chooses to participate, it must comply with the requirements of the Medicaid Act. With respect to the MPAC programs in Ohio, we maintain this noncompliance. The federal statutes are 42 U.S.C. 1396DP and 42 U.S.C. 1396AA10B. Congress established these programs with a precise statutory framework to determine Medicaid eligibility and make this mandatory on the states. To your knowledge, is anyone coming from a federal claim based on 1396DP or 1396AA10B, the claims that are issued in this case? No, Your Honor. The only cases that we have found on this issue have been state cases, which were cited. Scaliotis-Martin, which is a North Carolina case, and the Winnick case, which was a recent case in Florida. Those are the only three state cases which were addressed with this specific issue. There has been no federal decision on these precise statutes. So, looking at the statutory language itself, when you look under DP as to the framework that Congress set up, you take an applicant's income and you determine what his income is by looking at the Social Security statute, which is 1382A. You then look at his resources and you determine what are countable resources by looking at the Social Security statute under 1382B. Once you've done that, you take the income and you do not compare it to the Social Security statutes at 1382 or 1382C. This is an important distinction because this is where the Social Security SSI scheme is defined and used in the terms of individual need and couple need standards. The references to 1382A and 1382B, those are to the SSI part of the Social Security scheme? So, the point is that it's like a dog that doesn't bark on a 2A in the absence of a reference to SSI? Correct. 1382A just identifies the criteria. So, Congress is just reusing the criteria as to what's income, what's not income, and the same with the resources. But, when it comes to determining eligibility, Congress specified you take that income and you look at the federal poverty level, which is established under 99022. Federal allotment for the family the size of a dog. That's the specified language. That's what we're looking for. And that's exactly it. As a threshold matter on that, we would agree with you that per our recent decision in the H.A.I. G.H.D. case and Supreme Court cases that gave rise to that decision, the Congress' statute here has to make clear to the state that it has the obligation to provide assistance to your clients, or else it doesn't. Does that make sense? It does pretty much say it's done. Yes, I agree. It says that it has to be clear. But, obviously, the clarity and also even if the term was ambiguous in the sense of family, I disagree that it is ambiguous. But, even if it were ambiguous, the next step is still to look at congressional intent. What do they mean? Well, okay. I mean, personally speaking for myself, I think you get into dangerous territory for your position if you have to resort to legislative history and that sort of thing. Precisely because it has to be clear and you go to those things when it's not clear. But, you know, do you think you're going to help? Well, I certainly have to cover all bases. You know, and the issue, of course, gets into whether there's an actual defining. The federal poverty level, you go to it, it is set up, it has family size 1, 2, 3, 4, 5, 6, 7, 8, etc. and increasing income levels. It is set up recognizing that larger families require higher minimal income. So, there's no question that that's what Congress was trying to assist with, was saying that families that have someone who is on Medicare, okay, need some premium assistance or assistance with co-pays and deductibles. That's the statutory scheme that they set up here. Let's set aside for a moment your reliance on the 1988 OMB document that contained a very helpful for you definition of family. We set that aside and we look at the practice today on the federal government side, its usage of the OMB table. The definition, there is no definition, uniform definition of family on the federal side as they're using this table. The table says, okay, here's the poverty threshold income for families of this size, but they're not telling you how to define income or how to define the family because that varies across different programs. And I guess my response to that would be that that has evolved over the years because of newer and more additional programs that Congress has passed. When we're looking at the congressional intent in 1988 and 1990, there was a definition of family, not just the one I've referenced, but as in reply. But it's not in the statute. No, it's not in the statute. And I guess the way we think about this is a state official looks at the statute and thinks, okay, well, is this a bargain that you want to enter into? And there's nothing in the statute that says, you know, as defined in the OMB 1988 document. I think that's a greater, clearer statement, standard that we have. I guess, Your Honor, I would say that when they specifically reference, you know, as defined by the Office of Management and Budget in 199022 for the family size. And revised annually in accordance. Right. And, you know, it has been. I hope that's helpful. Okay. So I understand. I understand. And I guess let's just say I go back to the statutory framework itself. Okay. And what we have or what Ohio is doing is they have this, what they've identified as an SSI approach. Okay. But there is nothing that, I mean, the SSI approach doesn't exist. There is no individual. It seems like it's not even trying to answer the question of family, you know, what is the poverty line for families. That is correct. Or the size of the family. It's an altogether different question about individuals. Exactly. Exactly correct. That's exactly how I'm seeing it. But, you know, I would say that's sort of a mistake. Well, I'm sure. I'm sure. But that is exactly the case. I have referenced and I've filed two additional authorities the last two days, which may not have, simply because Ohio has repealed and rewritten the MCAP regulations. Okay. And in their rewriting, they've, in effect, they've totally eliminated the word family from Medicare premium assistance. They only reference the federal poverty level, and then they reference back that it has to meet an individual need standard or a couple need standard for the, which they then designate or identify in a letter as being FPL-01-2. Okay. So that is my, our issue here, that they have drafted SSI methodology in the sense of individual and couple need standard. And they've tried to draft that onto Medicare premium program that Congress didn't intend this framework. They intended look at the FPL for family and the size involved. Okay. And by doing so, then they've tried to make it work by saying, well, but we really need individual and couple need FPL-01-2. But they don't even look at a couple. They exclude the spouse. Okay. Ohio does have a general definition of family in its regulations, which I believe I referenced and it's not changed, but they don't use that. The State Hearing Decision Center make it clear that what they've done is impose additional eligibility criteria on families for eligibility, i.e., the spouse has to be Medicare eligible also. And, of course, children are never counted or accounted for family size. Thank you. Yes. Thank you. Good morning. May I please report? I'm P. Thomas for John McCarthy, the Director of the Ohio Department of Medicaid. So, starting with the idea of how clear this would be to a reasonable state official, if even CMS thinks that the SSI approach is appropriate and notes that most states do it, I don't see how it could possibly have been clearly stated to the states. Unless CMS is just totally wrong. I mean, I will say that, you know, we don't just sort of bow down to an agency letter. I mean, we have a federal statute here that was clearly determined. The fact that some agencies send some letter for reasons I don't know, it's just, as far as I'm concerned, not disposed. And this is not in Greece, but CMS also says in 42 CFR 435.601 that the nearest matching cash assistance federal program is the one that you use the income standard from to the group in Medicaid that's closely related, most closely related to it. And that would be SSI for this population. And then in that rule, CMS says, now you can use less restrictive standards if you want at state option, but you don't have to. So, it's even in a rule, it's not a direct interpretation, they're not saying, hey, this is what we think that statute means, but it does indicate that even CMS thinks that this approach is appropriate here. Okay, why don't we do a more direct analysis rather than through the lens of evidence. And I just want to sort of, I guess, put my concerns out in the open. If you read this, it's a really nice and clear brief. It does a real nice job of laying out the ground. And I understand, I mean, first of all, it seems like it's common ground to get this kind of clarity and information into this issue. That's helpful to you. It also seems, at least in terms of current practice, that there is no uniform definition of family in the federal law. That's correct. To you. And so you say, okay, the discourse said, family is an ambiguous term. And therefore, we have latitude and department the way we have. The concern I have with that is, you know, sometimes a term is ambiguous in a sense, yes, but not ambiguous as to everything. You know, one example I'll start with my first thought is the boundaries of France might have been ambiguous, you know, in the late 19th century because Alsace-Lorraine was disputed. But it wasn't ambiguous as to whether Paris was within it. And I wonder, in this case, I agree. I mean, it seems like there is some ambiguity about the outer bounds of family. But is there any definition of family in that does not include a resident spouse? Thank you. Sorry, I don't mean to make a speech. No, that's exactly right. This is a big case in the sense of consequences. I'm very modern with that. And I want to just tell you exactly what my concerns are. Thank you. So just to highlight what might be coming next and what I have time left, we don't think these provisions are privately enforceable anyway under 1983. Let's do that later. Just as a preface. I just want to get that in there. You already know that. Okay. We already talked about that. But the way that spouses are treated, and it's not family, it's family of the size involved. Is there any definition of family in here that you're aware of that does not include a resident spouse? I believe that at least one of the definitions that my friends on the other side cited below would just include people who are dependent. That may not be a spouse. Generally, a spouse is included, but it's not necessarily so for every single purpose, for every program that might ever be developed. Now, we do sometimes include the spouse in this program. The spouse is included under certain conditions, and this is reasonable because of the well-established principle that in Medicaid, a state is allowed to presume spousal support in deciding eligibility issues. And we count a spouse as being in the family and making it a family of two so that the couple needs standard is applied. When the spouse is either Medicare eligible, which means we can presume the spouse is not able to work and contribute meaningfully because they're either disabled or 65 or older, or if they're earning significant money, then we will not presume that there's a lack of support that could be there to prevent public benefits from being needed. And so in those cases, the family is counted as a family of two. And the spouse may be included if the spouse is in the family? No, if the spouse is either Medicare eligible, him or herself, or is earning enough money that's higher than the difference between the federal benefit rate for a couple and an individual. It's $367 this year. What you just said makes perfectly sound policies, but the question before us is an interpretive policy. And family is not defined, and so as an interpretive matter, would you agree that we then will get ordinary usage of the term? That's usually our next stop after the absence of the definition. It's a federal statute. If there's an ordinary usage of the phrase family of a size involved, I suppose so, but I don't think that's a term that has an ordinary meaning. It's a term of art. Involved triggers the idea that it's for the purposes of the program. And as the HHS points out every year in the priority updates, even family changes. Never mind the phrase family of a size involved. They could have written that differently. They wanted to say that we're talking about family for purposes of whatever the program is. In this case, it's the Medicare premium assistance program. And what we have here is the question of whether it is ever okay, lawful, to exclude the spouse from the number of people in the family when comparing it to the poverty line. I wonder why the dispute here is about the word family. I mean, the word involved, obviously that deals with the individual who is or is not going to be involved by the Medicare definition. And I don't really see involved as something that's ambiguous. In other words, I mean, I'm ashamed. You're saying it's a term of art, and I respect that. But I think the question here is what does family mean? And I just wonder, I mean, why isn't that a question of ordinary usage? Now, ordinary usage is going to be ambiguous to some extent. But is it going to be ambiguous about a resident spouse being part of the family? That's what I really haven't thought about. And I guess there's tension between that concept of the ordinary engineering family, always including the spouse, and the general idea that in Medicare we are permitted as states to have flexibility and to presume that a spouse who is able to contribute to the other spouse's support is expected to do so. And so we are doing that by the way we apply the numbers in the deeming statute. I understand. It's a serious point that you make. It's sort of this collision. Do we use our normal statutory approach, or do we sort of say almost this whole provision is a term of art that we have to sort of see, that we have to remain consistent with Medicare practices as shown by the letter and so on? It's hard, but it's also just a word in the statute that we give the term. And so maybe for that reason, we can move on to the enforceability of these provisions, because maybe that's going to be easier to decide. I know that I'm up against some precedent here. Harris case? Harris, yes. The language in 1396AA, which says a state plan must have these terms in it. Then 1396AB says, hey, Secretary, if the state plan has those things in it, you shall approve it. It's a list of terms that have to go into a document, a static document. It's not a command to states to do anything except put this in their document if they want the Secretary to approve it. There are no individually enforceable rights in 1396AA. This is not anything like the language in Gonzaga, which says no person shall be subject to discrimination. That was individually focused, unmistakably focused on the benefited class with an unambiguous conferral of rights. Nothing like that is going on here. This is spending clause legislation. It's about an agreement or something like a contract between two governments about what's going to go in a document. Now, the document will obligate the state to give those rights to people in the state law, but it is not a federal right being conferred on anybody. It's just a direction about what has to go in a document to start the process of having a Medicaid relationship between the two governments. Okay, so your point is 1396A says a state plan for medical assistance must provide. You're saying that's not saying the state must provide something directly to the Secretary. That's correct. You're just saying that a document must say. Say, yes. It is the word say, not the word give. Because you'll notice a lot of the – it's not consistent. I think maybe there are errors. It's a huge statute. But generally, the provisions after that start with must provide that, must provide for, must provide in the case of something for that. It keeps using those words that tell you that that word means state in the document and not give to people. The state has to give those things to people if it wants to have Medicaid, but that's not the same thing as Congress giving something to people. And I want to contrast that with another Medicaid provision. 1396AC4 says this directly in the statute. A child born to a woman eligible for and receiving Medicaid medical assistance under a state plan on the date of the child's birth shall be deemed to have applied for and been approved for Medicaid for a year after the child is born. That sure sounds a lot like a larger language to me. And there's nothing prefacing it to take it away from that directness. It's this shall happen to you or this shall not happen to you. It's right in the statute. Nothing like that exists in 1396AA. It is steps removed from the individual who might someday benefit from the provision. And as we've been told now multiple times, just getting a benefit is not what you need to have, of course, a right. It has to be unmistakable, unambiguous. Well, okay. But what do you do with Harris cases? I mean, Harris cases tend to be the exact same language I just read about the plan must provide. It's a 1396AA. Right. This is going to have to go higher. But the Harris case relied a little too much on Wilder, I think. Well, we're stuck with Harris, though, right? We have to apply. So what distinction would we make between the provisions here in 1396AA and 1393? You may not have any flexibility for that as a single panel. I don't know how that case was exactly argued and what was brought up and how the words of state plan must provide were being read at the time. But I think in that case, and in many cases, it was being read incorrectly as a direction to states to do something as opposed to directions to the Secretary, as Justice Scalia just said in the Armstrong case, in the part that's not the majority opinion. Armstrong got two weeks ago, I think. All right. I submitted it as supplemental authority, so it's not that. Okay. If it was enough— Perhaps the Supreme Court could say today. Well, in the part—I think this might be in the part that it's not the majority anymore because it's not a majority after Part III, Justice Scalia's opinion, but— Well, we'll chase that. But there is a note in the majority opinion about how weak Wilder is as support for private responsibility under 1983. And in that case, then, proceeded to talk about equitable relief, and it left the subject of 1983. But there were some comments about it, and also about private enforceability, and how significant it is that the direction is to the Secretary to approve a state plan. That's good reason, I think. And also, the remedy—we'll move on to the remedy here. There is a conventionally mandated—there's two remedies, actually, in the statute. One is the Secretary of HHS can withhold funding and sanction a state if the state's not doing what it's supposed to do under Medicaid. And Congress also mandates a hearing process in the administrative system in the state. Now, the details are not in the federal statute itself, but as the Harris case— Was it Harris? Harris or the communities case from their optimal six said, when there's a right in the statute that the CFR then illuminates and expands on, that becomes part of the right you can enforce. I think the same logic would apply when Congress says, have a hearing system set up for people to challenge their decision, and the CFR has a bunch of detailed rules about how those hearings are going to happen, and deadlines, and notice rules. And all that has been done in the CFR, and Ohio has adopted those into its own system, which the Hewlett case from 06 points out in a parallel case in a different benefits program, but it's the same rules and statutes. I would imagine that hearing process is really meant to answer just purely factual questions. They're not here to interpret 1396A. I'm sorry, Your Honor, I have to contradict that. There are absolutely legal questions you can ask. You can challenge your decision on any basis, including legal. We have lawyers making the decisions at the administrative level. There are two levels of appeal. And then you can appeal to court, and you can have— Why would we— Mr. Wheaton appeals— The appeal is a legal issue to us, which is the one that's here in person. Mr. Wheaton went to court. He had his legal arguments addressed, and that happened. I litigate these all the time. We're always dealing with constitutional, federal law questions, state law questions. Those are all available in the state system, in the state courts. And there is a limit on the state remedial system, and that is eliminated by the CFR. That's a 90-day deadline to ask for your hearing, which you would have two years in 1983. And we know that the restriction on that, in the Laurentian-Palos Verdes case, is a significant one. If the remedial scheme is more restrictive than the one you get under 1983, that's a significant indication that Congress may have meant to foreclose 1983 relief to you. Just real quick, because I know this applies to all of you. This hearing process would have also been available, I guess, if you planned it in Harris. I mean, is this a reason to distinguish Harris is what I'm asking. That was a freedom of choice of provider. I think it might have been available. Yeah, I'm sorry, I just talked. What is the section in the process for this hearing process? There's a bunch of them. Oh, the section in the federal law, 1396A-A-3. 1396A-A. A, parenthesis A, parenthesis B. Okay. And all the detailed CFR schemes and Ohio ones that implement those are in our review. Okay. Check it out. We ask the court to inform. Thank you. Thanks. Thank you. Your Honor, you certainly raised interesting questions. I would like to sort of pick up on a couple of those. When we're dealing with the definition of family, I'd like to point out that, in fact, cited in our brief, Ohio has a definition of family in its Medicaid regulations. I'm sure they're not what Congress is referring to. Well, your question was whether or not Ohio can define it, and Ohio has in its own regulations. Okay. But it chooses not to use it for Medicare premium assistance programs. Ms. Thomas' core point for one of them seems to be that, you know, I mean, this is hyper-specialized technical legislation, and it's really not in place for bringing in sort of ordinary usage and senses of terms. And we ought to look at family of the size of all as a term of art, which has to be consistent with the common practices and expectations of the Medicaid statute in particular. Why shouldn't we sort of push aside this more ordinary use of social interpretation and kind of put, you know, some kind of like eye shades on it and take a more technical view of all this? And that goes back to exactly how I started with what statutory framework the Congress set out. Okay. What Ohio has done is mistakenly taken specialized SSI criteria and imposed them artificially onto determining Medicare premium assistance eligibility, which is where I was running through the 1382s. So, yes, I'm being very specialized in how precise Congress was. They did not say individual couple need standard, which are terms of art under the SSI statutes in 1382 and 1382C. Congress specifically did not reference those sections. So, I mean, you folks are totally experts in this. Oh, try me. So, the 1382 provision that is referenced in 1396. Yeah, 1396DP. Yeah, one, two, three. So, you have the two provisions that reference 1382. Yes. And then you have the absence of a reference into that. That is correct. But the state is using this individual income measure. Yes. Is that measure set forth in the Social Security statute? What they've done is the definition of an individual need standard and a couple need standard are set forth in Social Security statutes, yes. What statute? 1382. C. And, well, there's a 1382, a 1382A, 1382B, 1382C. Which one? It's in 1382 and 1382C. Okay. Okay? So, that's where your individual and Ohio, as opposing counsel referenced, does this deeming of income calculation. That is also directly out of the SSI statutes in 1382 and 1382C. They do not exist in A and B. Okay. So, that's exactly my point. Then we get down to having used some SSI criteria to determine income and resources, what's countable. We then take that result, and then we go to a totally different statute and a totally different criteria for eligibility, namely the federal poverty level for the family of the size involved. Okay. And whether Ohio can, you know, define family to include cousins or cousins by the dozens or grandparents or whatever, okay, that's not our issue. Our issue is what Ohio does, which is imposing the individual need standard on families, the SSI approach. Resident spouses. Resident spouses. And, you know, we did ask for class certification, which would cover, by our definition, you know, the disabled mother who has four children at home. Well, you don't have any plans to deal with kids. Well, again, I guess our issue at this point was how family is defined should be an ordinary, you know, they should be using an ordinary definition of family, and that's how our class definition is set up as to family size. But, yes. We don't have a representative. We do not have a representative plaintiff at this point. That is correct. And, you know, we just didn't get that far. Right now, we do have resident spouses. And that will wrap up their license. Yes. Yes, I'm sorry. So, just wrapping it up, unlike what the district court said, it is not our burden to prove that there's an exclusive definition, but that Ohio's approach violates the statute. And I cited Phan v. Stumbo, which is a lower court case, but it has some language that says defendant may not by regulation frustrate the plain language of the statutory scheme and rewrite the congressionally mandated standards to render the Medicaid program totally meaningless, which is what we maintain has been done. If I just briefly – Your Honor, you mentioned – No, no, no. No, I was just asking – Your Honor had asked about Armstrong. Well, you're going back to a previous question. Oh, okay. Yeah, I followed up. What were you? You had mentioned about Armstrong. That has to do with supremacy. That's – Okay. So, thank you, Your Honor. Thank you for your arguments. They were well made on both sides. In the cases submitted, you made your point.